UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY NEWARK DIVISION

_THE MATTER OF:_

| | | |
|---|---|---|
| DONNA E. MARTIN  - | _Plaintiffs_ | Case no. _____ |
| JAY BRODSKY | | |
| | _-against-_ | |
| BMW MANHATTAN  - | _Defendants_ | |
| BMW of NORTH AMERICA | | |
| BMW GROUP FINANCIAL SERVICES | | |
| BMW GROUP INC. | | |
| JOHN AND JANE DOE | | |

# COMPLAINT ADDENDUM

COMPLAINT

Issues before the Court, Amongst Others:

15 U.S.C.A. § 2310

15 U.S.C.A. § 2301

Federal Magnuson-Moss Warranty Act.15 U.S.C.A. § 2308 (West)

N.Y. Gen. Bus. Law § 349 (McKinney)

N.Y. U.C.C. Law § 2-314 (McKinney)

N.Y. U.C.C. Law § 2-313 (McKinney)

15 U.S.C.A. § 2304 (West)

NJ Rev Stat § 12A:2-314 (2013)

NJ Rev Stat § 12A:2A-212 (2013)

N.J.S.A. 12A:2-316

N.J.S.A. 12A:2-317

New Jersey Law 12A:2-608

## AFFIRMATION:

1. On this 31st day of August, 2018, Pursuant to Federal Rules of Civil Procedure

Rule 8, the Petitioners, Donna Martin aka known as, Ms. Martin and Jay Brodsky

aka Mr. Brodsky, reside at, 240 East Shore Road, Apartment 444, Great Neck, New

York 11023 and duly depose that the facts as stated herein are true to the best of

their knowledge.

## VENUE AND JURISTICTION:

2. Under the Federal Rules of Civil Procedure Rule 8 (Fed. R. Civ. P. 80), Donna

Martin/Jay Brodsky file a complaint for damages against BMW Group Financial

Services 5550 Britton Parkway Hilliard, Ohio 43026, BMW of Manhattan, 555 W

57th St, New York, NY 10019, BMW of North America, 300 Chestnut Ridge Rd,

Woodcliff Lake, NJ 07677 and The BMW (Bavarian Motor Works) (BMW-GER)

Group Inc,, Petuelring 130, Munchen, D-80788, Germany at the United States

District Court for the District of New Jersey, Newark Division for reasons stated

forthwith.

3. The United States District Court for the District of New Jersey, Newark Division

has jurisdiction over the parties under 28 U.S.C.A. § 1332 because amongst other

things; BMW Group Financial Services, BMW North America and BMW of

Manhattan conduct a major part of their national operations in New Jersey and

conducts business activities from their headquarters in Hilliard, Ohio, New York

State and New Jersey respectively, with an advertising budget not exceeded in

other jurisdictions throughout the United States. The BMW Group Inc. is governed

by the laws of Germany and is headquartered in Munich, Germany. The Plaintiffs

reside in New York State, County of Nassau and at time of sale resided in the, State

of New Jersey, County of Essex.

5. Because there are issues pursuant to, Federal Magnuson-Moss Warranty Act.15

U.S.C.A. § 2308, and other Federal issues covered under the jurisdictional purview

of a Federal Court and actionable under the laws of the United States; the Plaintiffs

have a right to pursue damages to recover equitable relief, costs of suit, treble

damages and punitive damages as the court see's fit.

6. At least one of the Defendants, BMW North America, 300 Chestnut Ridge Rd,

Woodcliff Lake, NJ 07677, is licensed to do business in the State of New Jersey as

memorialized pursuant to 15 USC § 15 and 22, and 28; USC § 1391(b) and (c).

## THE PARTIES

*Pursuant to Rule 7(a) of the Federal Rules of Civil Procedure the parties are as Follows:*
Plaintiffs:

7. Donna Martin, 240 East Shore Road, Apt 444, Great Neck, New York 11023.

8. Jay Brodsky, 240 East Shore Road, Apt 444, Great Neck, New York 11023.

Defendants:

9. BMW Group Financial Services 5550 Britton Parkway Hilliard, Ohio 43026

10. BMW of Manhattan, 555 W 57th St, New York, NY 10019.

11. BMW of North America, 300 Chestnut Ridge Rd, Woodcliff Lake, NJ 07677.

12. The BMW (Bavarian Motor Works) (BMW_GER) Group Inc., Petuelring 130,

Munchen, D-80788, Germany.

## BACKGROUND ALLEGATIONS

13. The BMW Group Inc., aka, "Bavarian Motor Works," is an automobile

manufacturer that today has 30 production and assembly facilities in 14 countries

as well as a global sales network, is the world's leading manufacturer of premium automobiles and motorcycles, and provider of premium financial and mobility services.

14. BMW Group North America, was established in 1975 as the United States importer of BMW luxury/performance vehicles. BMW of North America assumed import and distribution responsibilities for BMW motorcycles in 1980. BMW of North America also began to distribute light trucks in 1999. BMW of North America's Corporate Headquarters is located in Woodcliff Lake, New Jersey. Its Eastern Regional Headquarters and Technical Training Center is located in Woodcliff Lake, New Jersey. A Vehicle Preparation Center is in Port Jersey, NJ and a Regional Distribution Center is in Nazareth, PA.

15. BMW Group Financial Services, (Bank) is a finance service and a company of the BMW Group. The company known under BMW Group Financial Services was founded in 1971 in Munich. In 1973 the BMW Leasing GmbH was added – also situated Munich. The fabricated products are BMW, MINI and Rolls-Royce Motor Cars. Worldwide BMW Group Financial Services are represented in 53 countries with 26 companies and 27 corporations.

16. BMW of Manhattan, is an automobile dealership that sells, services and leases nationwide, BMW automobiles to the public.

17. The Plaintiffs, particularly Donna Martin leased a 2012 BMW 6 series from BMW of Manhattan on the 22nd day of October, 2011 which was delivered on the 6th day of December, 2012. The vehicle was then leased for a second time to Ms. Martin upon satisfying the first lease on the 25th day of January, 2014 until it was terminated by repossession in January, 2016.

18. The BMW leased by the Plaintiffs was equipped with a N63 power-plant engine which is a twin-turbocharged, 4.4-liter V-8 with 402 horsepower that saw use in every 5 Series, 6 Series, 7 Series, X5, and X6 model that included "50i" designated name and was manufactured between 2008 and 2013. The N63 is the world's first production car engine to use a "Hot-Vee" layout, with the turbochargers being located between the banks of cylinders and the intake manifolds which are located outside of the engine. The N63 is also BMW's first V8 engine to use direct injection.

19. In 2012, a "Technical Update" was applied to the N63, resulting in the *N63TU* variants (also known as *N63B44O1*). The main upgrade was the addition of Valvetronic. Other changes include revised turbochargers, removal of the blowoff valve[1], lighter pistons[2], forged conrods[3] and crankshaft[4], addition of an oil catch can system[5], revised fuel system and addition of a second coolant pump[6].

20. It is alleged by the Plaintiffs that the N63 engine excessively burns oil due to a "defect," also known as, "oil consumption defect."

21. The function of motor oil relating to lubrication; The N63 engine is made up of many moving components which the majority are composed of metal. Oil is essential for keeping those components from grinding against each other. In less than seven-seconds an engine oil cycle completes providing lubrication to the crankshaft, bearings and pistons.

22. The function of motor oil relating to cooling; As the N63 engine operates, the mechanical energy produces heat as a byproduct. Most vehicles are equipped with an active cooling system that maintains optimal operating temperature. As oil

lubricates the moving components it also absorbs some heat, preventing from unnecessary friction.

23. The function of motor oil relating to protection; The ultimate function of engine oil is to protect the engine from damage due to friction.

24. The Defendants knew or should have known about this defect since 2008 or before when it was first discovered.

25. Secondly the Plaintiffs allege that as a direct result of the N63 engine defect burning excessive amounts of oil, it directly contributed to the subject vehicle suffering from premature battery failure in addition to excessive heat being generated due to a design flaw related to the turbo chargers being located between the banks of cylinders and the intake manifolds which are located outside of the engine causing the fans to run even after the engine shuts off.

................................................................................................................................

FOOTNOTES: [1] A blow-off valve (BOV), dump valve or compressor bypass valve (CBV) is a pressure release system present in most turbocharged engines. Its main purpose is to take the strain off the turbo when the throttle is suddenly released.

[2] A piston is a component of reciprocating engines, reciprocating pumps, gas compressors and pneumatic cylinders, among other similar mechanisms. It is the moving component that is contained by a cylinder and is made gas-tight by piston rings. In an engine, its purpose is to transfer force from expanding gas in the cylinder to the crankshaft via a piston rod and/or connecting rod. In a pump, the function is reversed and force is transferred from the crankshaft to the piston for the purpose of compressing or ejecting the fluid in the cylinder. In some engines, the piston also acts as a valve by covering and uncovering ports in the cylinder.

[3] A connecting rod is a rigid member which connects a piston to a crank or crankshaft in a reciprocating engine. Together with the crank, it forms a simple mechanism that converts reciprocating motion into rotating motion.

[4] A crankshaft—related to *crank*—is a mechanical part able to perform a conversion between reciprocating motion and rotational motion. In a reciprocating engine, it translates reciprocating motion of the piston into rotational motion; whereas in a reciprocating compressor, it converts the rotational motion into reciprocating motion.

[5] An oil catch tank (oil catch can) is a device that is fitted into the cam/crank case ventilation system on a car. Installing an oil catch tank (can) aims to reduce the amount of oil vapors re-circulated into the intake of the engine.

[6] A coolant pump is a type of pump used to recirculate a coolant, generally a liquid, that is used to transfer heat away from an engine or other device that generates heat as a byproduct of producing energy.

................................................................................................................................



26. On one particular day the Plaintiffs experienced a critical loss of power while driving causing the subject vehicle to shut off in the middle of an intersection on Madison Avenue (a major thoroughfare in New York City) during rush hour putting their lives in danger.

27. On several occasions the subject vehicle suffered a precipitous loss of power limiting its maximum speed due to a drop in oil pressure which also precipitated a clear and present danger to body and soul.

## FIRST ALLEGATION OF SUBSTANCE
### *Oil Consumption Defect*

*28.* The name "BMW" aka Bavarian Motor Works is iconic and well recognized for dealing, selling, repairing, warranting and designing automobiles that are manufactured in Germany and at satellite facilities in the United States and throughout the world.

29. As an iconic brand specializing in selling, designing and manufacturing high end automobiles, a consumer is led to reasonably expect when he or she purchases a vehicle from BMW, it will be sold as functional and without any known defects.

30. BMW manufactured and distributed vehicles powered by N63 engines from 2008 until present. The N63 engine was a unique new design in respect to the exhaust manifolds[7] and turbochargers[8] being located between the banks of cylinders and the intake manifolds[9] which are located outside of the engine; the opposite of the traditional arrangement for a V8 engine.

31. A problem with the N63 engine was discovered by BMW as far back as 2008. There was/is an inherent design flaw or defect that caused those engines to burn oil at an alarming rate which precipitated an abnormal amount of heat generated

.......................................................................................................

FOOTNOTES: [7] In automotive engineering, an exhaust manifold collects the exhaust gases from multiple cylinders into one pipe. The word *manifold* comes from the Old English word *manigfeald* (from the Anglo-Saxon *manig* [many] and *feald* [fold]) and refers to the folding together of multiple inputs and outputs (in contrast, an inlet or intake manifold *supplies* air *to* the cylinders).

[8] A turbocharger, or colloquially turbo, is a turbine-driven forced induction device that increases an internal combustion engine's efficiency and power output by forcing extra compressed air into the combustion chamber.[1][2] This improvement over a naturally aspirated engine's power output is due to the fact that the compressor can force more air—and proportionately more fuel—into the combustion chamber than atmospheric pressure (and for that matter, ram air intakes) alone.

[9] An intake manifold is a component that delivers either air or an air/fuel mixture to the cylinders. The design of these components varies widely from one application to another, but they all perform that same basic function, and they all have a single input and multiple outputs. In carbureted engines, the intake manifold connects the carburetor to the intake ports. In fuel-injected engines, the intake manifold connects the throttle body to the intake ports.

.......................................................................................................

causing the batteries in vehicles powered by N63 engines to need replacing as often as every year or 10,000 miles which is well before its prescribed life cycle of six years. The excessive heat also precipitates a shorter engine life due to abnormal wear and tear.

32. Due to excessive heat generated as a byproduct from N63 engines, the electric fans[10] mounted in front of the engine kept running even after the car shut down therefore continuously drawing energy from an insufficient 90 ampere battery which is it's only source of power.

33. Even though BMW knew or should have known there was a problem with excessive heat and insufficient battery power they failed their customers amongst other things by not providing a higher capacity battery to accommodate the N63 engines greater demands.

34. The battery deficiencies where first addressed by BMW when they issued technical bulletin SI B61 0 14 in December, 2014. The advisory to dealers suggested the replacement of batteries be routinely added to each oil change within the automobiles warranty period of 4 years or 50,000 miles.

35. The defect in the N63 engine can only be described as catastrophic. Not only does excessive oil consumption cause damage to aluminum constructed engine

........................................................................................................................................................... ..

FOOTNOTES:

[10] The engine cooling fan is designed to move air through the radiator when the vehicle is at slower speeds or stopped. This air flow removes heat from the coolant created by the engine using the radiator as a conductor. An engine cooling fan is temperature controlled to only run when needed.    [11] The cylinder block is an integrated structure comprising the cylinder(s) of a reciprocating engine and often some or all of their associated surrounding structures (coolant passages, intake and exhaust passages and ports, and crankcase). The term engine block is often used synonymously with "cylinder block" (although technically distinctions can be made between en bloc cylinders as a discrete unit versus engine block designs with yet more integration that comprise the crankcase as well).

........................................................................................................................................................... ..

blocks[11], it also causes them to prematurely seize during operation. The defects may also engender bodily harm or even death when the vehicle unexpectedly stops functioning at a most importune moment. Such an incident occurred when Donna Martin, Plaintiff was driving on Madison Avenue, New York City in the middle of an intersection at rush hour. During that incident the BMW she was driving stalled due to low oil and failed to restart for fifteen (15) minutes thereafter causing a major traffic jam prompting other motorists who were very upset to yell, honk and display obscene jesters as sign of their displeasure.

36. Upon execution of a lease to take possession of the subject vehicle none of the representatives who work at BMW of Manhattan including Greg Pol the salesman, the finance officer, nor the manager mentioned, referenced, acquainted, adduced, alluded, indicated, specified nor disclosed the existence of any defects even though they were previously informed by BMW that the subject vehicle with a N63 engine consumed excessive oil and had a propensity for diminished battery life since or before 2008. In fact when the subject vehicle was delivered a certified BMW trained technician spent nearly one hour explaining the features of the subject vehicle to the Plaintiffs without mentioning any of the aforesaid defects. During the same technical tour of the subject vehicle both Plaintiffs were introduced to members of the service advisory staff who although wishing them well failed to mention the problems existed pertaining to excessive oil burning and diminished battery performance despite being aware prior, during and after the subject vehicle was delivered

37. During the entire time the subject vehicle was under the Plaintiffs control they were forced to keep on hand in the trunk at least one extra quart of synthetic motor

oil at all times thereby causing the ever present distasteful odor of motor oil permeating throughout its confines which was especially pungent during the summer months.

38. BMW of Manhattan, BMW of North America, The BMW Group Germany and BMW Group Financial Services accepted a down payment and first months lease payment for the subject vehicle despite having prior knowledge that those explicated defects existed. The knowledge the Defendants chose to sequester or keep secret might have cost the Plaintiffs in excess of Twenty-Thousand Dollars ($20,000.00+) to replace the N63 engine due to excessive wear and tear when the warranty expired. In addition BMW had prior knowledge that numerous batteries would need replacing as well as quart after quart of synthetic motor oil being added on a regular basis.

39. Upon delivery of the subject vehicle, BMW suggested the oil be changed every 15,000 miles. After concluding the excessive oil burning problem had burgeoned to epidemic proportions it provoked BMW to issue service bulletin number B001314 which changed the required time interval for oil changes from 15,000 miles to 10,000 miles or once every year. That bulletin was issued secretly to BMW service centers only and not to the public. At no time during the issuance of that bulletin was there a mention of any defect to the Plaintiffs explaining the derivation for change in frequency for required oil changes.

40. Had the Plaintiff's been dutifully informed about the ongoing defects, excessive oil consumption and diminished battery performance, they would not have purchased, leased or had any association with the subject vehicle? There were

many other comparable choices at time of lease in lieu of the potential time bomb they committed to on two (2) separate occasions.

41. Despite being privy to the alleged defects, BMW of Manhattan, BMW of North America, The BMW Group Germany and BMW Group Financial Services never issued a recall to address, repair, fix, mitigate or solve those aforementioned defects. There was nor is no offer to reimburse the Plaintiffs and those similarly situated for costs incurred resulting from the defects the Defendants knew existed since or before 2008 which was four (4) years prior to the execution of lease for the subject vehicle.

42. Because the collective Defendants chose to intentionally coverup the defects the Plaintiffs suffered great harm and injury. When the subject vehicle was ultimately repossessed during lease number two (2) an alleged deficiency allegedly owed by Donna Martin to BMW Group Financial Services came to light. She was never informed or allowed an opportunity to purchase the subject vehicle at auction to satisfy any alleged deficiency which contravenes current law. In fact at time of auction the defects in the N63 engine were widely known to all including the public which substantially diminished the value of the subject vehicle therefore precipitating the alleged deficiency that haunts Donna Martin to this day. As a result of that alleged monetary deficiency being published on Equifax, Experian and TransUnion, Donna Martin's credit was/is severely damaged to a point of receiving rejections on car loans, being denied affordable housing and having her credibility damaged.  Wherefore Donna Martin and Jay Brodsky sustained injury by being impugned monetarily, loss of property and significantly devaluing the subject vehicle.

COMPLAINT

43. The Plaintiffs were forced to add oil to the engine of the subject vehicle at least
once (1) every month. Jay Brodsky is a disabled American who was responsible for
adding oil to the subject vehicle at the most inopportune times whether it be
raining, snowing, cold or hot with great pain to the Rheumatoid Arthritis he
suffered/suffers. Donna Martin has/had no knowledge about cars in general and
was/is incapable of tending to the subject vehicles excessive oil deficiencies.

44. The Defendants had a moral and fiduciary responsibility to disclose the
privately held defects to the public, particularly to their loyal customers,
particularly the Plaintiffs, allowing them the opportunity to decide whether or not
to lease or purchase a vehicle powered by a defective N63 engine. Secondly the
Defendants were required by law to recall vehicles sold or leased that were
powered by defective N63 engines to mitigate problems suffered by their
customers in a professional manner at their own expense. The Defendants shunned
their responsibility knowing a massive recall would be tantamount to incurring a
great monetary loss. The Defendants elected to instead conceal, withhold and
obfuscate the defects they knew existed since or before 2008.

45. The Defendants had a moral, fiduciary and legal obligation to disclose
the privately held defects they knew posed a significant hazard to those driving or
who were passengers in vehicles powered by N63 engines. Because BMWs have
built in governing systems that severely restricts the maximum speed due to
excessive heat or when running with low oil pressure grave consequences are
likely to occur. The sudden reduction of speed has potential to precipitate a
dangerous situation to the public who are likely sustain harm from a vehicles

unexpected diminished speed. Those restrictions occur arbitrarily and without warning to a driver or those driving near them.

46. Instead of informing owners and lessee's of vehicles powered by N63 engines BMW/The Defendants issued a series of bulletins which were directed exclusively to their dealers. Bulletins or TSBs are issued when a manufacturer receives widespread reports of a particular problem within the vehicles they sell.

47. The following are bulletins issued by BMW to their network of dealers:

....................................................................................................

(a.) NHTSA ID Number: 10046859

Service Bulletin Number: SIB-11-08-12

Summary: DUE TO DAMAGED SEAL RING, DURING ASSEMBLY, ENGINE OIL IS LEAKING FROM ENGINE OIL PUMP VOLUME CONTROL VALVE GASKET SEAL RING. MODELS E70, E71, F01, F02, F04, F07, F10, F12, F13. NO MODEL YEARS LISTED.

....................................................................................................

(b.) NHTSA ID Number: 10045282

Service Bulletin Number: SIB-11-07-12

Summary: BMW: WHILE DRIVING VEHICLE, AT

TIMES WOULD BE ROUGH RUNNING; WHITE OR BLUE SMOKE SEEN EXITING EXHAUST SYSTEM AND THE ENGINE OIL IS CONSUMED ABOVE SPECIFICATIONS.

....................................................................................................

(c.) Service Bulletin Number: SIB-11-03-13

Summary:

-All engines normally consume a certain amount

of engine oil. This is necessary in order to properly lubricate the cylinder walls, pistons, piston rings, valves and turbocharger(s), if equipped. In addition, engines with less than 6,000 miles will generally consume additional engine oil because the internal engine components are not fully seated (break-in). Therefore, engine oil consumption complaints received prior to 6,000 miles cannot be considered. Once a new or remanufactured engine has accumulated 6,000 miles, oil consumption can be considered if there is a drastic change in the engine oil consumption rate (e.g., the engine oil consumption rate triples) under similar driving conditions.

Engines equipped with a turbocharger(s) will consume more engine oil than normally aspirated engines (non- turbocharged). The additional oil that is consumed in a turbocharged engine is mainly due to the turbocharger lubrication requirements. Some of the engine oil normally migrates past the turbocharger turbine bearing seals and will enter the intake tract of the engine.

-All turbocharged engines also require a complex crankcase ventilation system. The crankcase ventilation system needs to maintain a small vacuum on the crankcase and not allow the crankcase to be pressurized. Pressurizing the engine crankcase can lead to external engine oil leaks and increased engine oil consumption via the piston rings and valve seals. When the load and the boost level of a turbocharged engine is varied, the path of the crankcase pressure is changed. During the crankcase ventilation path transition, a small amount of

engine oil will pass through the crankcase ventilation system and is additionally consumed. The additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect.

...................................................................................................................

Oil Consumption specification:

- All BMW engines (excluding Motorsport) can consume up to 1 quart of engine oil per 750 miles at any time.

- Due to the increased engine power, all Motorsport engines can consume up to 2 5 quarts of engine oil per 1,000 miles at any time.

Turbocharged Engines:

-Engines that are fitted with a turbocharger(s) will consume more engine oil than naturally aspirated engines (non-turbocharged engines). In this case, a turbocharged engine could require topping of engine oil more frequently. For vehicles with N63 and N63T engines, refer to SI B11 01 13 for additional details.

...................................................................................................................

48. Instead of the Defendants proffering a, "*mea copa*," to confess information regarding the defects they already knew existed on or before 2008 the Defendants instead engaged in a massive coverup to keep those defects a well concealed secret. The Defendants misrepresented and obfuscated the truth by telling their customers, "The excessive oil consumption was completely normal." The Defendants congruently imparted a willful effort to mislead their customers into believing it was normal for all cars with turbochargers to consume oil excessively.

49. There of course is nothing normal about BMW automobiles consuming twenty (20) quarts of synthetic oil over a prescribed time period which at time

sale was fifteen thousand (15,000) miles between oil changes over the life of a vehicle powered by the N63 engine.

50. In service bulletin B001314, "N63 Customer Care Package," it was notated that a radical change pertaining to the specified time period required for routine oil change services was in effect. The change was from the original fifteen thousand (15,000) miles for an oil service to ten thousand (10,000) for an oil service which identified the following vehicles as effected:

..............................................................................................

-F01 and F02 (7 Series Sedan) – produced from 3/2009 to 6/2012 F04 (Active

Hybrid 7) – produced from 4/2010 to 6/2012

-F07 (Gran Turismo) – produced from 9/2009 to 6/2012

-F10 (5 Series Sedan) – produced from 3/2010 to 7/2013

-F12 (6 Series Convertible) – produced from 3/2011 to 7/2012 F13 (6 Series

Coupe) – produced from 7/2011 to 7/2012

-E70 (X5) – produced from 3/2010 to 6/2013

-E71 (X6) – produced from 7/2008 to 6/2014

-E72 (ActiveHybrid X6) – produced from 9/2009 to 9/2011

..............................................................................................

47. Upon receiving information from consumers, the National Highway Traffic Safety Administration ("NHTSA") issued a bulletin via the internet explicating a widespread defect. The following is that explicated bulletin. (There were many grammatical and spelling errors contained within that bulletin)

..............................................................................................

(a.) NHTSA ID Number: 10678748 Date Complaint Filed: 01/25/2015 Vehicle:

2011 BMW 550I Summary:

HAVE TO ADD OIL EVEY 500 MILES, AND I DID NOTICE THERES [sic] A

RECALL ON THE CAR BUT BMW DOES NOT WANT TO CALL IT A

RECALL. I THINK TI [sic] MAY EFFECT CAR 5 YEARS FROM NOW.

...................................................................................................

(b.) NHTSA ID Number: 10691781

Date Complaint Filed: March 3, 2015

Vehicle: 2012 BMW X6

Summary:

VEHICLE HAS BEEN SMOKING, BURNING OIL AND LEAVING A BLACK

RESIDUE ON TAIL PIPES AND ON PAINT AROUND TAILPIPES SINCE

APPROXIMATELY 6 MONTHS OLD. BMW SERVICE ADVISED OIL USAGE

WAS NORMAL FOR VEHICLE AND REFUSED TO INVESTIGATE

FURTHER. OIL CONSUMPTION HAS CONTINUED TO INCREASE TO AS

MUCH AS 6 QUARTS IN LESS THAN 5,000 MILES. HAVING SERIOUS

ENGINE MALFUNCTIONS WITH ENGINE SHUT DOWN, WITHOUT

WARNING AND WITHOUT ABILITY TO COMPENSATE FOR

TRAFFICCONDITIONS. BELIEVE THERE IS AN INHERENT DEFECT IN

THE ENGINE AND THAT CAR IS A DANGER. BMW SERVICE SIMPLY

CHECKS FOR VISIBLE OIL LEAKS BUT REFUSES TO INVESTIGATE

FURTHER.

...................................................................................................

(c.) NHTSA ID Number: 10692476

Date Complaint Filed: March 9, 2015 Vehicle: 2012 BMW 750LI Summary:
CONSUMER WRITES IN REGARDS TO HIGH OIL CONSUMPTION. *SMD
THE CONSUMER STATED HE HAD TO ADD OIL FREQUENTLY.

........................................................................................................

(d.) NHTSA ID Number: 10534669

Date Complaint Filed: August 10, 2013

Vehicle: 2013 BMW 550I

Summary:

ENGINE CONTINUES TO BURN THROUGH OIL APPROXIMATELY EVERY
1,500 MILES, WHICH COULD LEAVE THE VEHICLE STRANDED AND
INOPERABLE. IT'S UNACCEPTABLE IN A BRAND NEW VEHICLE.

........................................................................................................

(e.) Online Complaint

Date of Complaint: May 21, 2013 Vehicle: 2013 BMW 750 Summary:

a. I got a new 2013 750 this last February and I am having problems with the oil
levels.

b. I drove the car for 2,700 and I got a indicator that the oil levels were low.

c. I went to the dealer and put 1 QT of oil. After 20 days I got it again at 3700
miles.

d. I went to the dealer and put another QT and measured the level, it was a the top.

e. Two days later, I re-measure the level and now is at the mid level.

f. No response from the dealer with a logical answer, same from BMW HQ, just
phone talk and no real answers.

COMPLAINT

51. The Defendants conspired to conceal, withhold and obfuscate the defects by first issuing a denial or stating emphatically that, "The N63 engine burning oil at an alarming rate is quite normal due to the nature of it being a high performance."

## SECOND ALLEGATION OF SUBSTANCE
*Battery defects relating to the N63 engine*

52. The Plaintiffs allege that the battery[12] provided as standard equipment to the subject vehicle, was inherently susceptible to premature wear due to a design flaw particularly pertaining to the N63 engine. The well documented defect was/is serious enough to warrant a complete battery replacement at least once every year or within every ten thousand (10,000) miles of use which is far below the standard six (6) years expected for normal battery life.

53. There is a design flaw associated with the cooling systems in BMWs equipped with N63 engines that are powered by a standard 90 ampere battery that is standard equipment. The standard equipment 90 ampere batteries are insufficient and cannot handle the energy loads they are required to regularly handle.

54. Documented within bulletin number SI B61 30 14 dated December, 2014 there are acknowledgments of those aforementioned battery problems. They read as follows:

(a.) Vehicles with N63 engines require additional cooling capacity, and the activation of the various cooling system components places additional demands on the battery.

FOOTNOTE: [12] *An automotive battery is a rechargeable battery that supplies electrical current to a motor vehicle. Its main purpose is to feed the starter, which starts the engine. Once the engine is running, power for the car's electrical systems is supplied by the alternator.*

(b.) Several enhancements have been made to the power management system on such vehicles. However, in a quest to ensure total customer satisfaction, please replace the 12-volt battery on a preventive maintenance basis at every engine oil service (engine oil service counter # 1, # 2, # 3, etc.), unless the battery was replaced within the last 12 months.

(c.) VEHICLES EQUIPPED WITH AN N63 ENGINE ONLY

This procedure only pertains to the models and production ranges listed above that are equipped with an N63 engine.

At every engine oil service covered under the 4 year/50,000 miles BMW Maintenance Program:

(1.) Perform a Key Read on the vehicle and check to see if an engine oil service is "Recommended" or "Due" by miles or will be required in the next 60 days or less.

(2.) Confirm the battery was not replaced previously during the last 12 months.

(3.) If the conditions described in steps 1 and 2 are satisfied, replace the battery simultaneously with the performance of the engine oil service.

Important note: Do not perform an energy diagnosis for this battery replacement.

(4.) Replace the battery with a 105 Ah battery (this is an upgrade from the originally fitted 90 Ah battery).

55. The aforementioned bulletin notates a significant increase in demand on the N63 electrical system in consonance with the design of the subject vehicles cooling system. It must also be notated that the bulletin provides no provision for BMW and their appointed agents and dealers to take financial responsibility for costs incurred by their customers once the warranty expires.

COMPLAINT

56. After the four (4) year or fifty-thousand (50,000) mile warranty expires it is the customers responsibility to purchase and replace any defective battery even though the cause was a result of an inherent design flaw BMW knew existed since or before 2008:

..............................................................................................................

*Below are the recommended battery options for your vehicle. Depending on vehicle specifications, a battery from a specific tier may be required.*
*To redeem your offer, choose your dealer and print out the price sheet below. Offer valid only with printed price sheet.*



# PERFORMANCE BATTERY

For high powered and advanced vehicles that require additional power due to vehicle options, specifications and custom configurations.

# $470

**Includes Parts and Labor.**
**BMW of Manhattan**
555 W 57th St
New York, NY 10019-2925
Phone: (212) 586-2269

..............................................................................................................

COMPLAINT

57. BMW, their agents and authorized dealers aka the Defendants were privy to knowing about defects such as excessive oil consumption and diminished battery performance before the Plaintiffs, particularly Donna Martin considered leasing the subject vehicle from BMW of Manhattan. It has been established that those defects concealed, withheld and obfuscated by the Defendants on or before 2008. Numerous technical service bulletins (TSBs) that included but were not limited to prerelease testing data, early consumer complaints addressing excessive oil consumption and premature battery failure. As a result of disclosing those facts there was testing, analyzation of repair orders, analyzation of high warranty rates precipitated by customer complaints that were concealed, withheld and obfuscated as they potentially caused BMW and the Defendants to obligate themselves for thousands of dollars in associated costs of repairs to mitigate those defects. 58. Despite the Defendants being fully apprised of the potential consequences and associated costs, they still sequestered pertinent information from their customers who were considering purchasing or leasing vehicles powered by N63 engines. The Defendants obfuscated the following:

...................................................................................................

(a) Failed to disclose, at and after the time of purchase and thereafter, any and all known material defects or material nonconformities of N63 powered Vehicles, including the Oil Consumption and Battery Defects and, among others, the frequent supplemental oil costs between regularly scheduled oil changes and frequent need to replace the battery;

(b) Failed to disclose at the time of purchase that BMW vehicles and their N63 engines were not in good working order, were defective, and were not fit for their intended purpose; and

(c) Failed to disclose or actively concealed the fact that the BMW vehicles and their N63 engines were defective as a result of excessive oil consumption and battery performance defects, despite the fact that the Defendants knew or should have known of such defects prior to vehicles powered by N63 engines being sold.

....................................................................................................

59. BMW and the Defendants provide/provided a warranty to all newly purchased or leased vehicles that includes repairs for all defects discovered without charge for parts or labor as long as those defects are discovered within the prescribed four (4) years or fifty-thousand (50,000) miles whichever occurs/occurred first.

60. The remedies explicated within the offered warranty does not however include the outlay of money by their customers to purchase and keep with them quart after quart of synthetic motor oil[13] as prompted by the excessive oil consumption.

61. When the Plaintiffs leased their new vehicle from BMW of Manhattan there was no realistic expectation of necessity to purchase additional synthetic oil beyond what was/is required at routine oil changes.

62. When the Plaintiffs leased their new vehicle from BMW of Manhattan they never expected to encounter defects that were previously known to the Defendants and concealed from them. They never expected the Defendants to conceal, withhold and obfuscate information of such an important nature that would potentially endanger them by sustaining injury, death or exorbitant extra costs associated with their purchase/lease.

COMPLAINT

63. As a consequence of the Defendants dishonesty, the Plaintiffs were subjected to a newly acquired vehicle that would eventually have a significantly diminished value which ultimately caused extreme detriment to Donna Martin when her personal credit history was impugned by BMW Group Financial Services. 64. Resulting from the subject vehicles diminished value that was precipitated by the well known defects, when it was auctioned at public sale there was an alleged monetary deficiency of nearly $13,000.00. As a direct result of that occurring Donna Martin was denied past, present and future car loans, denied affordable housing and denied consumer credit at a reasonable interest rate thereby causing a loss at great detriment to both Plaintiffs.

## TOLLING STATUTE OF LIMITATIONS

65. In Koch v. Christie's Int'l PLC, 699 F.3d 141 (2d Cir. 2012), "A statute of limitations may be tolled due to defendant's fraudulent concealment if plaintiff establishes:

(1) defendant wrongfully concealed material facts relating to defendant's wrongdoing;

(2) (2) concealment prevented plaintiff's discovery of nature of claim within the limitations period; and

(3) (3) plaintiff exercised due diligence in pursuing discovery of claim during the period plaintiff seeks to have tolled."

FOOTNOTE [13] Synthetic oil is a lubricant consisting of chemical compounds that are artificially made. Synthetic lubricants can be manufactured using chemically modified petroleum components rather than whole crude oil, but can also be synthesized from other raw materials. Synthetic oil is used as a substitute for petroleum-refined oils when operating in extreme temperature.

## THE COURT MUST APPLY NEW JERSEY LAW

66. The BMW Group Inc. has its BMW North American headquarters located in Woodcliff Lakes, New Jersey. The BMW North American Technical Training Center is located in Woodcliff Lakes, New Jersey. The BMW Vehicle Preparation Center is located in Port Jersey, New Jersey where BMW automobiles arrive in the United States by cargo ship.

67. BMW of Manhattan has its headquarters and conducts business from a dealership located in New York, New York. They sell and lease BMW, Mini Cooper and Rolls Royce automobiles to customers who reside in New Jersey/New York and nationwide. The Plaintiffs subject vehicle was leased from BMW of Manhattan on two separate occasions when Donna Martin signed, first a new car lease and then a preowned car lease for the same subject vehicle.

68. The Plaintiffs resided in New Jersey when the first new lease was executed at BMW of Manhattan.

69. The Plaintiffs resided in New York when a second preowned car lease was executed at the same dealership, BMW of Manhattan.

70. The subject vehicle was serviced both in New Jersey and in New York. The conspiracy to conceal, withhold and obfuscate information that likely originated from BMW of North America at their headquarters in Woodcliff Lakes, New Jersey. At BMW of North America's headquarters and technical training center decisions pursuant to marketing, advertising and strategy are conceived. That was/ is where the conspiracy that caused the Plaintiffs to sustain injury was/is formulated.

## QUESTIONS OF IMPORTANCE BEFORE THE COURT

71. There are many questions before the court redressing issues pertaining to the BMW N63 engine:

......................................................................................................................

(a) Whether N63 BMW engines are/were defectively designed or manufactured such that they are not suitable for their intended use;

(b) Whether N63 BMW engines are defectively designed or manufactured such that they consume excessive quantities of oil;

(c) Whether BMW N63 engines suffer from an Oil Consumption Defect that would be considered material by a reasonable consumer;

(d) Whether BMW N63 engines are defectively designed or manufactured such that they cause premature wear of the battery resulting in the need for abnormally frequent battery replacements;

(e) Whether BMW N63 engines suffer from a defect causing premature wear of the battery and abnormally frequent battery replacements would be considered material by a reasonable consumer;

(f) Whether as a result of Defendant's concealment or failure to disclose material facts, caused the Plaintiffs to act to their detriment by purchasing a BMW vehicle powered by an N63 engine;

(g) Whether the Defendants were aware of the Oil Consumption Defect before vehicles powered by N63 were first sold to consumers;

(h) Whether Defendants continued to sell vehicles powered by N63 engines to consumers after they were aware of the Oil Consumption Defect;

(i) Whether the Oil Consumption Defect constitutes an unreasonable safety risk;

(j) Whether Defendants were aware of the Battery Defect before vehicles powered

by N63 engines were first sold to consumers;

(k) Whether Defendants continued to sell vehicles powered by N63 engines to

consumers after they were aware of the Battery Defect;

(l) Whether the Battery Defect constitutes an unreasonable safety risk;

(m) Whether Defendants breached the express and implied warranties with

respect to the vehicles powered by N63 engines;

(n) Whether Defendants had a duty to disclose the defective nature of the

vehicles powered by N63 engines and their Oil Consumption and Battery Defects

to the Plaintiffs;

(o) Whether Defendants violated the consumer protection statutes of New

Jersey and New York when they sold vehicles powered by N63 engines to

consumers who suffered from the Oil Consumption and Battery Defects;

(p) Whether Plaintiffs are entitled to equitable relief, including but not limited to a

preliminary and/or permanent injunction;

(q) Whether Plaintiffs are entitled to damages and the amount of any such

damages; and

(r) Whether Defendants should be held liable to Plaintiff's who incurred damages.

..................................................................................................

## COUNT ONE

*Violation of the New Jersey Consumer Fraud Act*
*56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or*
*real estate as unlawful practice*

72. The act, use or employment by any person of any unconscionable commercial

practice, deception, fraud, false pretense, false promise, misrepresentation, or the

knowing, concealment, suppression, or omission of any material fact with intent

that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser. L.1960, c. 39, p. 138, s. 2. Amended by L.1967, c. 301, s. 2, eff. Feb. 15, 1968; L. 1971, c. 247, s. 1, eff. June 29, 1971; L.1975, c. 294, s. 1, eff. Jan. 19, 1976.

73. The Plaintiffs, particularly Donna Martin, leased a new vehicle from BMW of Manhattan and associated Defendants.

74. The Plaintiffs, particularly Donna Martin, leased the same subject vehicle as preowned from BMW of Manhattan and associated Defendants.

75. The Defendants intentionally withheld, concealed and obfuscated vital information from the Plaintiffs causing them to sustain injury. Withholding such vital informational constitutes unlawful and illegal business practices promulgated by the Defendants.

76. The Defendants intentionally and willfully conspired to withhold vital information about all vehicles powered by BMW N63 engines excessively consuming oil at an abnormal and alarming rate. Defects known by the Defendants caused consumers are compelled to add extra quarts of synthetic oil at their own expense every 750 miles in consonance to the originally prescribed 15,000 miles

later changed to 10,000 miles unbeknownst to the Plaintiffs during the entire time of their lease.

77. The Defendants intentionally and willfully conspired to withhold vital information about vehicles powered by BMW N63 engines having defects that caused mandatory battery replacements as often as every 10,000 miles or once every year. Once the warranty expired all costs for battery replacement and labor devolved to becoming the consumers responsibility with no further obligation attributed to the Defendants to pay for such repairs.

78. The Defendants knowingly and willfully conspired to withhold, conceal and obfuscate vital information regarding defects known only to them that effected a vehicle leased to the Plaintiffs powered by an N63 engine two separate times, once as a new vehicle and again as a preowned vehicle. By engaging is such illegal and unlawful acts the Defendants denied the Plaintiffs an opportunity to impart an educated decision whether or not to purchase a defective vehicle at great expense or whether to purchase another vehicle that is/was free of defects.

79. The information concealed, withheld and obfuscated by the Defendants exemplifying known defects endangered the Plaintiffs, public in general, pedestrians and other motorists because those defects potentially could/would cause those unsuspecting individuals to sustain injury.

80. By the Defendants willfully engaging in unlawful and illegal acts of trade and commerce they violated the New Jersey Consumer Fraud Act.

81. The Defendants by their unconscionable acts caused the Plaintiffs to regularly add oil to the engine when the check oil light appeared on the information cluster of the subject vehicle. During the course of leasehold for the subject vehicle the

battery discharged therefore warranting service. Those issues impugned the Plaintiffs by significantly diminishing the value of the subject vehicle which at some later point directly caused great monetary harm along with pain and suffering to occur. Wherefore the Plaintiffs are entitled to be remunerated for such damages by the court imposing treble damages, remuneration for costs associated with adjudicating the issues before the court, punitive damages, compensation for intentional infliction of emotional distress, damages associated with negligent infliction of emotional distress, damages for the Defendants conversion of the Plaintiffs funds and other appropriate damages as the court see's fit.

82. There is a direct correlation between the Defendants conspiring to conceal, withhold and obfuscate information required by the Plaintiffs to impart an educated assessment whether or not it was prudent to lease a defective motor vehicle that would diminish in value upon disclosure by the Defendants of those defects to the public.

83. The court must enjoin the Defendants from further engagement in those illegal acts to protect the public from sustaining injury.

COUNT II
BREACH OF EXPRESS WARRANTY
*N.J.S.A. 12A:2-316*

84. Prior to leasing the subject vehicle from BMW of Manhattan and the Defendants, the Plaintiffs relied on facts proffered by the Defendants warranting that the goods and services they sold were of the highest quality, free from defects in respect to the materials used and the craftsmanship imparted to create such an alleged high quality vehicle. The Defendants expressly warranted to the Plaintiffs

that those same high quality standards applied to both new vehicles as well as certified preowned.

85. The Defendants conspired, concealed and obfuscated the truth about defects known only to them that ultimately impugned the Plaintiffs by causing premature significant loss of value, which the Defendants had previous knowledge thereof. 86. Due to the surreptitious illegal actions of the Defendants who congruently conspired to withhold valued information about inherent defects in N63 engines, they cannot be allowed to escape being held accountable.

87. Time limitations for the adjudication of aforementioned issues must be deemed invalid as the Plaintiffs had no way to address the issues in a court of law because the Defendants concealed, withheld and obfuscated facts only they knew existed until recently disclosed.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### *NJ Rev Stat § 12A:2-314*

88. WHEREFORE, Plaintiffs bring this action on behalf of themselves ProSe. 89. As defined within the Uniform Commercial Code, BMW including, The BMW Group Inc., BMW of North America, BMW Group Financial Services and BMW of Manhattan collectively known as the Defendants are considered to be, "Merchants."

90. The subject vehicle and those similarly situated are considered as, "Goods" by those same standards.

91. When both leases associated with the subject vehicle were executed, the Defendants congruently implied prior to precipitating said sale/lease that the subject vehicle was, "Merchantable" and "Free of Defects."

92. Due to the surreptitious concealment, withholding and obfuscation of those defects known only by the Defendants, caused the Plaintiffs to sustain harm and injury therefore entitling them to compensation for damages incurred.

93. Due to the surreptitious illegal actions of the Defendants who congruently conspired to conceal, withhold and obfuscate valued information about inherent defects in N63 engines only they knew existed, they cannot avoid being held accountable.

94. Time limitations for the adjudication of those aforementioned issues must be deemed invalid as the Plaintiffs had no way to address the issues in a court of law because the Defendants concealed, withheld and obfuscated facts only they knew existed until recently disclosed.

## COUNT IV
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

95. In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing. This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.[14]

96. To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of the parties.

97. A party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of another party to receive the benefits or reasonable expectations of a contract.

98. WHEREFORE, Plaintiffs bring this action on behalf of themselves ProSe.

COMPLAINT

99. A covenant of good faith and dealing is implied in all contracts executed in the State of New Jersey and New York.

100. The Plaintiffs, particularly Donna Martin, adhered to the terms of the lease contract presented to them by the Defendants and duly executed said lease upon delivery of the subject vehicle.

101. The collective Defendants breached the covenant of good faith and dealing by concealing, withholding and obfuscating defects known only to them that applied exclusively to BMW N63 engines. They failed to disclose that N63 engines were susceptible to excessive consume oil and that there was widespread battery defects then failing to rectify or mitigate those defects.

102. By the Defendants acting with malfeasant intent, they denied the Plaintiffs a reasonable opportunity to adjure a suitable decision to prevent themselves from sustaining injury in amounts yet to be determined by this court.

## COUNT V
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
*15 U.S.C. § 2301, et seq.*

103. WHEREFORE, Plaintiffs bring this action on behalf of themselves ProSe.

104. As defined by The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.. the Plaintiffs are, "Consumers."

105. The Defendants who are all associated with "BMW" are, "Suppliers" and

*FOOTNOTE [14] The U.C.C. addresses the issue. "Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." N.J.S.A. 12A:1-203. Good faith is generally defined as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1-201(19). "Good faith in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." N.J.S.A. 12A:2-103(b). Although the U.C.C. governed in Sons of Thunder, Inc., supra, the Court stated that the common law duty also influenced the Court's analysis. Sons of Thunder, Inc. v. Borden, Inc., supra, at 420-421.*

"Warrantors," as defined in The Magnuson-Moss Warranty Act, 15 U.S.C. §
2301(6), et seq.

106. The subject vehicle powered by an N63 engine is a, "Consumer Product," as
defined in The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

107. Upon delivery and prior to that event, the Plaintiffs were proffered a, "Written
Warranty," as defined in The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et
seq.; All vehicles sold by BMW are covered under 15 U.S.C. § 2301(7).

108. One the cardinal predicating factors the Plaintiffs relied on when leasing the
subject vehicle was the, "Express Warranty," particularly its length and scope.

109. The subject vehicle came equipped with a standard N63 engine which as
implied by the Defendants was free of defects. Instead when the Plaintiffs acquired
possession after executing a lease contract, particularly Donna Martin, was
mislead, beguiled, betrayed and even defrauded by the Defendants who failed to
disclose defects known only to them. Those undisclosed facts included excessive
oil consumption and inherent battery defects.

110. The, "Implied Warranties," issued at time of lease execution for the subject
vehicle was designed for the benefit of the Plaintiffs and those similarly situated.

111. When the Defendants discovered those aforementioned defects they had
ample time and opportunity to rectify, replace and mitigate harm from those
defective parts that were/are the genesis of the defects. Instead they adjured a
decision to conceal, withhold and obfuscate the truth from the Plaintiffs because
disclosure would impugn them monetarily. Presently it is to late for the Defendants
to informally satisfy the unlawful acts they committed in the past. The Plaintiffs
were impugned beyond the pale of imagination when Donna Martin's credit was

ruined, injured and subverted as a result of the subject vehicle being sold as undervalued at auction which created a monetary deficiency that to this day is still unsatisfied. BMW acted recklessly and without regard for the Plaintiffs well being.

112. Had the Plaintiffs demanded to return the subject vehicle prematurely on their own volition prior to the satisfaction of lease contract *in toto* because those defects significantly devalued its value, BMW would have rejected the action outright and retaliated against the Plaintiffs for not satisfying the lease.

113. The Defendants were repeatedly notified about consumer complaints about the excessive oil consumption and diminished battery performance by the numerous service requests they received and warranty data that was readily available to them by their engagement in extensive research.

114. The Plaintiffs sustained damages relating to the Defendants breach of, "Written Warranty," and other damages that can only be determined by a jury at trial. The Plaintiffs are entitled to recover actual damages sustained, damages relating to diminished value of the subject vehicle that resulted in a serious monetary deficiency to Donna Martin when the vehicle was ultimately sold at auction, damages for higher housing costs, damages for paying higher interest rates to acquire consumer credit, damages for the intentional infliction of emotional distress, damages for negligent infliction of emotional distress, damages for libeling Donna Martins financial reputation, punitive damages for engaging in unlawful and corrupt acts at the Plaintiffs peril, conversion damages, compensation for costs to adjudicate this complaint and other relief as the court see's fit.

## COUNT VI
## DECEPTIVE ACTS AND PRACTICES UNLAWFUL
### *N.Y. Gen. Bus. Law § 349*

115. BMW of Manhattan is registered business located in New York, New York that engages in selling, leasing, servicing, repairing and warranting new and preowned automobiles to the public thereby are considered as, "Merchants," by New York State.

116. The Plaintiffs leased a vehicle from BMW of Manhattan on two separate occasions. Both times the Plaintiffs, particularly Donna Martin, leased the same subject vehicle powered by an N63 engine. For those reasons the Plaintiffs are considered as, "Consumers," by New York State.

117. BMW of Manhattan received and kept secret information regarding defects that hampered the performance and suppressed valuation of the subject vehicle. Therefore the Defendants willfully and with prior knowledge of defects leased a vehicle to the Plaintiffs, particularly Donna Martin, knowing those inherent defects would eventually diminish significantly the value of the subject vehicle when the information was disclosed to the public.

118. NewYork General Business Law § 349(a) and (b) clearly states the following:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts

or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

119. As those unlawful acts were committed in New York State the Defendants must be held accountable for damages sustained relating to, "Breach of Written Warranty," and other damages that can only be determined by a jury at trial. The Plaintiffs are entitled to recover actual damages sustained, damages relating to diminished valuation of the subject vehicle which resulted in a serious monetary deficiency to Donna Martin when the vehicle was ultimately sold at auction, damages for higher housing costs, damages for paying higher interest rates to acquire consumer credit, damages for the intentional infliction of emotional distress, damages for negligent infliction of emotional distress, damages for libeling Donna Martins reputation, punitive damages for engaging in unlawful and corrupt acts at the Plaintiffs peril, conversion damages, compensation for costs to adjudicate this complaint and other relief as the court see's fit.

## COUNT VII
## IMPLIED WARRANTY; MERCHANTABILITY NEW YORK STATE
### *N.Y. U.C.C. Law § 2-314*

120. BMW of Manhattan is business located in New York, New York, that engages in selling, leasing, servicing, repairing and warranting new and preowned automobiles to the public thereby are considered as, "Merchants," by New York State.

121. The Plaintiffs leased a vehicle from BMW of Manhattan on two separate occasions. Both times the Plaintiffs, particularly Donna Martin, leased the same subject vehicle powered by an N63 engine. For those reasons the Plaintiffs are considered as, "Consumers," by New York State.

122. BMW of Manhattan received and kept secret information regarding defects that hampered the performance and valuation of the subject vehicle. Therefore the Defendants

willfully and with prior knowledge leased a vehicle to the Plaintiffs, particularly Donna Martin, knowing there were inherent defects that would eventually diminish significantly the valuation of that subject vehicle if the information were to be disclosed to the public.

123. New York Uniform Commercial Code Law § 2-314 states the following applicable law:

(a) Unless excluded or modified (Section 2-316), <u>a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.</u>

124. The subject vehicle and those similarly situated are considered as, "Goods," by those same standards.

125. At time of both leases pertaining to the same subject vehicle, BMW of Manhattan implied prior to selling/leasing the vehicle that it was, "Merchantable," and "Free of defects."

126. Due to the surreptitious concealment of the explicated defects contained herein and known only to BMW of Manhattan and the other closely associated Defendants, the Plaintiffs sustained harm and injury therefore entitling them to compensation for damages incurred.

127. Due to the surreptitious nature of their illegal acts BMW of Manhattan and the other closely associated Defendants who congruently conspired by withholding vital information about inherent defects in N63 engines, cannot avoid being held accountable to the Plaintiffs for them sustaining injury.

COMPLAINT

## COUNT VIII
## EXPRESS WARRANTIES BY AFFIRMATION NEW YORK STATE
### *N.Y. U.C.C. Law § 2-313*

128. *Express warranties by the seller are created as follows:*

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(d) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

129. Prior to leasing the subject vehicle from BMW of Manhattan and the Defendants, the Plaintiffs relied on facts proffered to them that the goods and services the Defendants warranted were of the highest quality, free from defects in respect to the materials used and the craftsmanship imparted to create such a high quality vehicle. It was expressly warranted by the Defendants to the Plaintiffs that those same standards applied to both, new vehicles and preowned.

130. The Defendants conspired, concealed, withheld and obfuscated the truth about defects known only to them would ultimately impugn the Plaintiffs by causing a

Case 2:18-cv-13885-KM-JBC  Document 1-1  Filed 09/13/18  Page 42 of 46 PageID: 47

Case No.                    Brodsky/Martin v. BMW                    Page 42 of 46

premature loss of value, which the Defendants hoped would never be disclosed to the public.

131. Due to the surreptitious illegal actions of the Defendants who congruently conspired to withhold valued information about inherent defects in N63 engines, they must be held accountable.

## COUNT VIIII
## VIOLATION FEDERAL MINIMUM STANDARDS FOR WARRANTIES
*15 U.S.C.A. § 2304(a)(1)(2)(3)(4)*

132. The Defendants had knowledge of defects to the N63 engine in 2008 or before.

133. The defects known only to the Defendants were withheld from consumers by concealing, withholding and obfuscating the N63 engines excessive oil consumption and inherent diminished battery performance due to a design flaw.

134. As the Plaintiffs, particularly Donna Martin, are "Consumers," in consonance with 15 U.S.C.A. § 2304(a)(1)(2)(3)(4).

135. BMW of Manhattan and the other associated Defendants who concordantly leased the subject vehicle to the Plaintiffs are thereby considered as, "Merchants."

136. Since 2008 or before, when the excessive oil consumption and diminished battery performance was discovered by the Defendants, they engaged in an unlawful and illegal coverup rather than fixing the issues. They made no effort to rectify or fix the aforementioned defects which violated the essence of 15 U.S.C.A. § 2304(a)(1)(2)(3)(4).

137. Due to the surreptitious nature of their illegal acts BMW of Manhattan and the other closely associated Defendants who congruently conspired by withholding

vital information about inherent defects found in N63 engines, must be held accountable to the Plaintiffs for causing them to sustain damages.

138. As these unlawful acts were committed in New York State, the Defendants must be held accountable for damages sustained relating to breach of, "Written warranty," and other damages that can only be determined by a jury at trial. The Plaintiffs are entitled to recover actual damages sustained, damages relating to diminished value of the subject vehicle which resulted in a serious monetary deficiency to Donna Martin when the subject vehicle was ultimately sold at auction, damages for higher housing costs, damages for paying higher interest rates to acquire consumer credit, damages for the intentional infliction of emotional distress, damages for negligent infliction of emotional distress, damages for libeling Donna Martins reputation, punitive damages for engaging in unlawful and corrupt acts at the Plaintiffs peril, conversion damages, compensation for costs to adjudicate this complaint and other relief as the court see's fit.

## COUNT X
## REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART
New Jersey Law 12A:2-608(1)(b)

139. The Plaintiffs, particularly Donna Martin, are lessee's of the subject vehicle powered by an N63 engine.

140. BMW of Manhattan is a dealer of tangible goods that sells, leases, services, repairs and warrants new and preowned automobiles to the public in New York State/New Jersey and nationwide.

141. Upon execution of a lease for the subject vehicle, Donna Martin, the lessee, was misled into believing the subject vehicle she was leasing was of the highest

quality and free from defects as warranted by BMW of Manhattan and the
Defendants.

142. Upon delivery and prior to, at no time were the Plaintiffs informed or made
aware that preexisting defects would ultimately devalue the subject vehicle.

143. At no time were the Plaintiffs told the N63 engine which was standard
equipment in the motor vehicle they were leasing had inherent defects such as
excessive oil consumption or a propensity for diminished battery performance that
would ultimately devalue the subject vehicle significantly.

144. *New Jersey Law 12A:2-608(1)(b) states the following:* "without discovery of
such non-conformity if his acceptance was reasonably induced either by the
difficulty of discovery before acceptance or by the seller's assurances."

145. BMW of Manhattan having prior knowledge that the aforementioned defects
existed induced the lessee's to execute a lease agreement in good faith by
concealing, withholding and obfuscating facts about known defects that would
ultimately impugn the value of the subject vehicle.

146. As the Plaintiffs resided in the State of New Jersey at time of purchase, the
Defendants must be held accountable for damages sustained relating to breach of
written warranty and other damages that can only be determined by a jury at trial.

147. The Plaintiffs are entitled to recover actual damages sustained, damages
relating to diminished value of the subject vehicle which resulted in a serious
monetary deficiency to Donna Martin when the vehicle was ultimately sold at
auction, damages for higher housing costs, damages for paying higher interest rates
to acquire consumer credit, damages for the intentional infliction of emotional
distress, damages for negligent infliction of emotional distress, damages for

libeling Donna Martins reputation, punitive damages for engaging in unlawful and corrupt acts at the Plaintiffs peril, conversion damages, compensation for costs to adjudicate this complaint and other relief as the court see's fit.

## PRAYER FOR RELIEF

148. For an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims brought under the New Jersey Consumer Fraud Act, breach of express and implied warranties under all relevant statutes, and breach of the covenant of good faith and fair dealing and in an amount to be proven at trial;

149. For an award of exemplary and punitive and treble damages pursuant to the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-19) and in an amount to be proven at trial;

150. For an order requiring Defendants to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

151. For an order enjoining the wrongful conduct alleged herein;

152. For costs associated with adjudicating this matter;

153. For interest and penalties;

154. For such other relief as the Court deems just and proper.

155. For intentional infliction of emotional distress;

156. For negligent infliction of emotional distress;

157. For conversion;

158. For libel;

*Signed this 31st day of August, 2018 at Great Neck, New York*

*Jay Brodsky, Plaintiff, ProSe*

*Donna Martin, Plaintiff, ProSe*

……………………………………………………………………………………………………..

**END**

COMPLAINT